UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

JANE DOE,　　　　　　　　　　　　　　　　Civil Action No. 20-CV-03908

　　　　　　　　　　　Plaintiff,

　-against-

KEVIN CAHILL,

　　　　　　　　　　　Defendant.

-------------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S EX PARTE MOTION TO PROCEED UNDER A
<u>PSEUDONYM AND FOR A PROTECTIVE ORDER</u>**

Dated: May 20, 2020
　　　　Brooklyn, New York

　　　　　　　　　　　　　　　　　　　　　　　C.A. GOLDBERG PLLC
　　　　　　　　　　　　　　　　　　　　　　　Aurore C. DeCarlo
　　　　　　　　　　　　　　　　　　　　　　　Carrie A. Goldberg
　　　　　　　　　　　　　　　　　　　　　　　16 Court Street, 33rd Floor
　　　　　　　　　　　　　　　　　　　　　　　Brooklyn, NY 11241

## INTRODUCTION

Plaintiff Jane Doe ("Plaintiff"), by her attorneys, C.A. Goldberg PLLC, hereby seeks authorization to file a Complaint in the above-captioned matter as a pseudonymous Plaintiff. In light of the serious nature of the allegations contained in the Complaint as well as sensitive medical information that underlies the relevant allegations, Plaintiff is justifiably concerned about the possibility of acts of reprisal, and the infliction of further harm should her identity be revealed. Plaintiff's identity should not be disclosed to the public due to the nature of the allegations in said Complaint. See Declaration of Aurore C. DeCarlo, Esq. attached to Plaintiff's Ex Parte Motion to Proceed Under Pseudonym and for Protective Order. Defendant is aware of Plaintiff's true identity and Plaintiff is prepared to provide a statement of her true identity under seal, upon the Court's request.

## STATEMENT OF FACTS

Defendant is a preventative medicine specialist who maintains a medical office in New York City. Defendant is believed to be approximately 82 years old. Defendant had been infatuated with Plaintiff, a young woman approximately 52 years his junior, since early 2009 when Plaintiff first received medical treatment from him for a parasitic infection. For years following their meeting, Defendant constantly peppered Plaintiff with phone calls, letters, and emails. His incessant demands for Plaintiff's attention soon turned into repeated romantic overtures and declarations.

Over the past decade, Defendant had sent Plaintiff hundreds of emails and letters, and had called her hundreds of times, leaving hundreds of voicemails, all in his never-ending campaign to court her romantically. While Plaintiff kept in touch with Defendant for the purpose of maintaining a friendship with him as someone she admired greatly, she made it very clear on many occasions

that she did not have romantic feelings for him and would not consider entering into an intimate relationship with him.

In 2018 Plaintiff began experiencing extreme physical symptoms – including vomiting, passing out, and going into a state of bodily shock every time she was on her menstrual cycle. Her symptoms were so severe that she had to drop out of her courses in college. She consulted with multiple doctors but none of them could help alleviate her symptoms or properly diagnose an underlying cause. Desperate, Plaintiff reached out to Defendant by email asking for a referral. He responded by connecting her with a specialist in Colorado, Plaintiff's home state. This doctor diagnosed Plaintiff with endometriosis.

While Plaintiff was relieved to have a diagnosis, the pain she suffered was unbearable and she did not have the financial means to secure proper treatment. Desperate for help, Plaintiff reached out to Defendant in November 2018. She was clear that she did not want a romantic or physical relationship and that her reaching out to him was purely for help with her medical crisis. At first the communications between Defendant and Plaintiff were friendly and constructive as Defendant appeared focused on helping Plaintiff get the treatment she needed. Defendant was well aware that Plaintiff could not afford the surgery she needed to free her from the enormous pain she was in.

Unfortunately, Defendant's romantic infatuation resumed around January 2019 and he again began peppering her with constant entreaties to enter into a romantic relationship with him. At the same time, Defendant made arrangements for Plaintiff to receive the surgery needed to treat her endometriosis.

Largely out of desperation to receive the surgery she so badly needed, Plaintiff maintained friendly contact with Defendant and endured his uncomfortable and persistent romantic advances, all while repeatedly reminding him that she did not reciprocate any romantic interest.

Defendant made arrangements for Plaintiff to undergo surgery with an endometriosis excision specialist on February 28, 2019. On January 30, 2019, per Defendant's instructions, Plaintiff visited Defendant's medical office for what Defendant had described as a necessary physical exam which she understood would be limited to blood and urine tests. At Defendant's office, Plaintiff did give blood and urine samples but then was asked by Defendant to enter an examination room. As she sat on the examination table across from him Defendant stated "the last time you were here you were just a little girl." Plaintiff found this comment completely inappropriate and it made her uncomfortable.

Then Defendant insisted that Plaintiff change into a hospital gown stating that he needed to check her for parasites by way of a rectal exam. Plaintiff was completely baffled, as she was presenting no symptoms for parasites and had no idea why such an exam would be relevant to the surgical procedure for endometriosis. When Plaintiff objected to the exam, Defendant insisted that as her 'referring physician' her needed to complete it and send the results to her surgeon before she could receive further treatment. The implication to Plaintiff was clear: she needed to meet Defendant's demand or else she would not be able to receive the surgery that she desperately needed.

In preparation for the exam, Defendant insisted that Plaintiff completely undress (even her top, a seemingly unnecessary disrobing for a rectal exam) and put on a hospital gown. The door to the examination room was closed and no other staff was present inside the examination room with Plaintiff and Defendant. While she lay on her side, Defendant shoved his finger into Plaintiff's

rectum without warning or explanation, and moved it around for approximately 30 seconds. This was an excruciatingly embarrassing and uncomfortable experience for Plaintiff. It was in fact an invasive assault undertaken for no legitimate medical purpose and against Plaintiff's vocalized protests. Plaintiff observed that there was no laboratory equipment in the examination room, such as a slide or other specimen collection device. Defendant used only a finger, and no other probing device, such as a sigmoidoscope. Plaintiff doesn't remember if Defendant had even bothered to put gloves on before abruptly inserting his finger inside her. When Defendant completed his "examination" he left the room abruptly merely saying, "put your clothes on."

Plaintiff put her clothing back on. When Defendant re-entered the room, he immediately began speaking to Plaintiff about his romantic desires. He told her, as he often had in the past, that she needed to "be courageous" and that nobody would ever love her the way he could love her. He insisted that she come to his New York City apartment in order to assess his "taste" and to see that it was compatible with hers. Confused and disgusted Plaintiff refused Defendant's advances and left his office.

In February, Plaintiff traveled back to New York City in order to undergo the surgery that Defendant had arranged. Defendant again insisted that Plaintiff visit him at his apartment and again she avoided meeting him there. On February 26, she received an email stating that she must come to Defendant's medical office for a pre-op appointment for her upcoming surgery. Plaintiff believed that Defendant were going to share all of the information she needed in order to be ready to have surgery in two days. Once she was inside one of the examination rooms, Defendant insisted that Plaintiff get completely undressed. He handed her a paper hospital gown and told her that she was required to undergo a "pre-operative" exam. Plaintiff had already undergone a pre-operative

examination in Colorado, but Defendant insisted that she needed to complete one in accordance with New York State standards.

Defendant then left the room but for only a brief moment and suddenly re-entered, without knocking or warning, before Plaintiff was done undressing. Much to her discomfort he remained in the room while she finished undressing and put on her hospital gown. Similar to Plaintiff's previous visit, no other staff was present in the examination room, and the door was closed. Defendant told Plaintiff, "I saw in one of your medical files that your breasts swell before your period." Plaintiff confirmed this to be true. Without any warning or explanation, Defendant rammed his hand down the collar of Plaintiff's hospital gown and began fondling her breasts. Defendant did not explain to Plaintiff the medical purpose behind his need to fondle her breasts. Utterly confused, Plaintiff was frozen with fear and shame. Defendant then forcefully ripped open Plaintiff's hospital gown to create an opening near her stomach, through which he inserted his hands again touching her all around her stomach, below her breasts, and then lower just above her pelvic area. This fondling of her breasts, stomach and low waist area endured for over a minute.

Snapping out of her initial shock and confusion, Plaintiff panicked and pulled away. Defendant instructed her to sit up straight on the examination table and gripped her arms. Defendant began to touch Plaintiff's neck as though he were checking her lymph nodes. Then, without warning, Defendant forcefully kissed Plaintiff on the mouth. Plaintiff said "no, wait, wait", pulling away, at which point Defendant stopped and said "We're not there yet but we are getting close.". He held Plaintiff tight by the forearms, said "I love you" and attempted again to kiss her again but she turned away. Shortly thereafter Plaintiff abruptly left Defendant's office, again disgusted and severely anxious about what had occurred.

On February 28, 2019, Plaintiff underwent surgery for the endometriosis. The surgery was intensive but successful. As soon as she awoke from the general anesthesia, she remembers her phone ringing constantly from Defendant's calls. After she was discharged from the hospital, Plaintiff stayed in New York City for several weeks in order to heal from surgery before she traveled home. During this period of time, Defendant called Plaintiff incessantly. He left many voicemails, many of which Plaintiff saved. In one voicemail dated March 3, 2019, he stated, "I called you 27 times yesterday and you never returned my call." He ended the call by insisting that she come see him in his office again so that he could ensure she was "medically safe" to travel home.

On March 7, 2019, Plaintiff wrote Defendant a letter in which she again insisted that she had no interest in seeing him romantically. Despite the fact that she made her intentions clear, Defendant's intrusive phone calls to Plaintiff continued. On March 15, 2019, Plaintiff left New York City because she had healed enough in order to travel home. Even then Defendant continued his communications with her, insisting that he could help her make a movie about endometriosis. Plaintiff understood that this was only another attempt to entangle himself in her life, even though she had made it abundantly clear that she did not want any romantic or physical relationship with him. Defendant continued harassing Plaintiff with communications until she cut off all contact with him in or around July 2019.

Defendant's conduct towards Plaintiff was manipulative, abusive, and unlawful. Defendant abused his position as a physician, took advantage of Plaintiff's vulnerability and desperation for medical care, and assaulted her by performing medically unnecessary, unwarranted, non-indicated rectal and breast exams for no medical purpose. Defendant performed these exams in a deviant

and sexual manner, all the while refusing to divulge the precise purpose for the exams, and the medical conditions for which they were necessary.

Defendant made his ulterior and improper motives in performing these examinations all too clear by repeatedly declaring his romantic interest in Plaintiff and urging her to be intimate with him during visits to his medical office, as he had done for years prior and in the months that followed Plaintiff's surgery. Based on Defendant's mis-representations, Plaintiff believed that the visits to Defendant's medical office were necessary to receive a surgical procedure she desperately needed. Prior to these appointments, over many months and years, and in the weeks and days leading up to these appointments, Plaintiff had on several occasions told Defendant that she was not interested in a romantic or intimate relationship with him. Plaintiff relied entirely on Defendant's representations *as his patient*, and never consented to, in any informed fashion, to be assaulted through the invasive and unnecessary rectal and breast examinations performed by Defendant without explanation. Nor did Plaintiff consent to be assaulted by Defendant when he forcibly kissed her without her consent during what was supposed to be a medical visit between doctor and patient.

As a result of Defendant's course of conduct towards Plaintiff, she experienced extreme distress, anxiety, depression, and isolation and now seeks redress for her injuries.

## **ARGUMENT**

Federal courts have allowed plaintiffs to proceed anonymously under special circumstances. In determining whether a party can proceed anonymously courts must balance "the plaintiff's right to privacy and security against the dual concerns of (1) the public interest in identification of litigants and (2) the harm to the defendant stemming from suppression of plaintiff's name." *Doe v. Smith,* 105 F.Supp.2d 40, 44 (E.D.N.Y.1999) .

The Second Circuit has put forth a list of non-exhaustive factors to be considered when conducting this balancing test:

(1) whether the litigation involves matters that are highly sensitive and of a personal nature;

(2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;

(3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;

(4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age;

(5) whether the suit is challenging the actions of the government or that of private parties;

(6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice, if any, differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

(7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff. <u>Sealed Plaintiff v. Sealed Defendant</u>, 536 F.3d 185, 190 (2008).

A. <u>This litigation involves matters that are highly sensitive and of a personal nature</u>

In her complaint, Plaintiff alleges that she is a victim of sexual assault at the hands of a physician who was supposed to be coordinating treatment of Plaintiff's endometriosis. Revealing Plaintiff's identity would not only involve the exposure of sensitive health information, cause Plaintiff humiliation and embarrassment, but would also implicate highly sensitive and privacy issues for Plaintiff as a victim of sexual assault.

Many courts have allowed victims of sexual assault to proceed anonymously. <u>See e.g</u>. *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006); *Grottano v. the City of New York,* 2016 WL 2604803 (S.D.N.Y. Mar. 30, 2016); *Prasad v.Cornell Univ.*, 2016 WL 3212079 (N.D.N.Y. Feb. 24, 2016) (permitting identification of alleged victim of sexual assault as "Jane Doe" during proceedings); *Doe v. Penzato*, 2011 WL 1833007 (N.D.Ca. May 13, 2011); Doe v. Evans, 202 F.R.D. 173 (E.D.Pa. 2001); *Doe v. Western Am. Province of the Capuchin Franciscan Friars,* 2015 WL 8770017 (D. Or. Dec. 13, 2015) (allowing the plaintiff to proceed as "Jane Doe" in light of the "accepted practices of the federal courts of the United States, allowing those who have been victims of sexual assault and/or who fear reprisals from the particular litigation to commence cases under assumed names"); *Doe v. Cabrera,* 301 F.R.D. 1 (D.D.C. 2014) (allowing victim of sexual assault to proceed as a "Jane Doe" plaintiff); *Doe v. Blue Cross & Blue Shield United of Wis.,* 112 F.3d 869 (7th Cir. 1997) (indicating that the use of "fictitious names [is] allowed when necessary to protect the privacy of … rape victims…"); *Roe v. St. Louis Univ.,* 2009 WL 910738 (E.D.Mo. Apr. 2, 2009) (allowing rape victim plaintiff to use a pseudonym because plaintiff's privacy interest outweighed the public's right to access judicial records); *E.E.O.C. v. Spoa, LLC.,* 2013 WL 5634337 (D. Md. 9 Oct. 15, 2013) (finding that "sexual assault" is a "highly sensitive and personal matter"); *Doe v. City of Chicago,* 360 F.3d 667, 669 (7th Cir. 2004) (in denying the right

to proceed anonymously, court emphasized the fact that the plaintiff was "not a minor, a rape or torture victim, a closeted homosexual, or … a likely target of retaliation by people who would learn her identity only from a judicial opinion or other court filing") (emphasis added).

Courts have recognized that forcing victims of sexual assault to publicly reveal their identities could result in further victimization and loss of dignity, resulting in more harm than good. See *Doe v. Cabrera,* 301 F.R.D. 1, at *5,n. 6 (D.D.C. 2014); Doe v. Shakur, 164 F.R.D. 359, 362 (S.D.N.Y.1996); Rose v. Beaumont Indep. Sch. Dist., 240 F.R.D. 264, 267 (E.D.Tex. 2007).

Based on the highly sensitive and personal matters involved in this case, Plaintiff's request for anonymity should be granted.

B. Requiring disclosure of Plaintiff's name would result in significant harm to Plaintiff

Courts have repeatedly recognized that the disclosure of the names of victims of sexual assault makes such individuals susceptible to added ridicule, stigmatization, and further mental and emotional harm. See e.g., *Doe v. Cabrera*, 301 F.R.D. 1, at *5, n. 6 (D.D.C. 2014); Doe v. Shakur, 164 F.R.D. 359, 362 (S.D.N.Y.1996); *Rose v. Beaumont Indep. Sch. Dist.,* 240 F.R.D. 264, 267 (E.D.Tex. 2007); *E.E.O.C. v. Spoa, LLC.,* 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding that ordering the plaintiff to proceed under her own name "poses needless risk of mental harm" and further finding that "[i]t is not simply that Doe may face embarrassment from … widespread disclosure … but rather she may face psychological harm from having this sensitive experience made permanently available to anyone with Internet access"). Here, Plaintiff seeks redress for, among other things, the tremendous emotional harm she has suffered as a result of the assaults perpetrated by Defendant. These assaults were inflicted in a highly sensitive and private environment – in Plaintiff's physician's medical office where Plaintiff was seeking

care for a highly sensitive medical condition – endometriosis. To force Plaintiff to reveal her identity would not only expose her as a victim of sexual assault but would also unveil highly personal and sensitive health information. Exposing her identity would not only fail to remedy the already present emotional injuries Plaintiff seeks redress for but would in fact leave her vulnerable to further harm. Forcing Plaintiff to reveal her identity would not further any aspect of the litigation but would "instead pose[] a risk that Plaintiff would be subject to unnecessary ridicule and attention." *Doe v. Colgate Univ.,* 2016 WL 1448829, at *3.

Based on the foregoing, Plaintiff should be permitted to proceed anonymously, as requiring her to reveal her identity would result in significant harm to Plaintiff, including the exact damages she seeks to remedy in this matter; namely psychological and emotional damages.

C. <u>Allowing Plaintiff to proceed anonymously would not prejudice Defendant</u>

Defendant will not be prejudiced in pursuing any of his defenses and/or counterclaims should Plaintiff be allowed to proceed anonymously. "Other than the need to make redactions and take measures not to disclose plaintiff's identity, Defendant will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006). These minimal requirements will not interfere with Defendant's ability to fully litigate his defenses and/or counterclaims and engage in comprehensive discovery. Most significantly, Defendant is already aware of Plaintiff's identity. <u>See</u> DeCarlo Declaration at ¶11. Accordingly, Plaintiff should be permitted to proceed anonymously.

D. <u>There is a weak public interest in knowing Plaintiff's identity</u>

The Second Circuit has recognized that, "the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." <u>See</u> *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006) (citing

*Doe v. Evans,* 202 F.R.D. 173, 176 (E.D.Pa. 2001)) (emphasis added); *Doe v. Evans,* 202 F.R.D. 173 (E.D. Pa. 2001) (finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…").

In today's world anyone can access court filings and parties' identities through the internet thereby exposing sexual assault victims to further harm. See *Doe v. Boulder Valley Sch. Dist. No. RE-2*, 2011 WL 3820781, at *3 (Aug. 30, 2011) ("[A]lthough the media frequently exercise discretion in not publishing the names of sexual assault victims, electronic case filing allows anyone with an internet connection to access public pleadings, which means that revealing plaintiffs' names could expose them to contact be persons seeking to exploit their perceived vulnerability").

Revealing Plaintiff's identity would do nothing to increase public interest in the case that would be sufficient to outweigh Plaintiff's right to privacy. The public interest in this matter will be adequately served as the public will be made fully aware of the underlying allegations and claims. Keeping Plaintiff's identity anonymous will only present a very minimal restriction on the public's knowledge. Conversely, forcing Plaintiff as a victim of sexual assault, to reveal her identity could have a potential chilling effect on other similarly situated future plaintiffs, a result widely recognized by federal courts across the nation. See e.g., *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195-96 (E.D.N.Y. 2006); *Doe v. Cabrera*, 301 F.R.D. 1, at *6-8, n. 9 (D.D.C. 2014) ("[t]his Court agrees that unnecessarily compelling victims of alleged sexual assault to reveal their identities in a case could set forth precedent that has the unintended consequence of discouraging similarly situated victims in the future from reporting sexual assault crimes"); *Doe v. Evans,* 202 F.R.D. 173, 176 (E.D.Pa. 2001)) (emphasis added); *Doe v. Evans,* 202 F.R.D. 173

(E.D. Pa. 2001)(finding that "the public has an interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights…").

Many states in this country, including New York, have enacted laws to protect the anonymity of sexual assault victims. See N.Y. Civil Rights Law § 50–b. Upon approving New York's rape shield law, then Governor Mario Cuomo stated, "sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy." 1991 McKinney's Sessions Laws of N.Y., at 2211–2212 (quoted in *Deborah S. v. Diorio,* 153 Misc.2d 708, 583 N.Y.S.2d 872 (N.Y.City Civ.Ct.1992)); see also *Coker v. Georgia,* 433 U.S. 584, 597, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) ("Short of homicide, [rape] is the ultimate violation of self").

Any public interest in knowing Plaintiff's specific identity and name is far outweighed by the public interest in safeguarding the anonymity of sexual assault victims and the interests of a much larger group of potential plaintiffs. Plaintiff should thereby be permitted to proceed anonymously.

Based on the foregoing, in consideration of the balancing of relevant factors, the Court should allow Plaintiff to proceeding anonymously in this matter. The interests of Defendant and/or the public will not be harmed at this early stage of the case if Plaintiff's proceeds under a pseudonym. Plaintiff is prepared to address measures to protect the confidentiality of her identity should the Court require disclosure to the public at a later stage in the proceedings.

## **CONCLUSION**

For these reasons and such other reasons as may appear just to the Court, Plaintiff Jane

Doe requests that her Ex Parte Motion to Proceed Under Pseudonym and for Protective Order be granted in its entirety.

Dated: Brooklyn, New York
      May 20, 2020

                                                  C.A. GOLDBERG PLLC

                                 By:    <u>/s/ Aurore C. DeCarlo</u>
                                                  Aurore C. DeCarlo, Esq.
                                                  Carrie A. Goldberg, Esq.
                                                  16 Court Street, 33rd Floor
                                                  Brooklyn, New York 11241
                                                  Tel. (646) 666-8908
A                                                  aurore@cagoldberglaw.com
                                                  carrie@cagoldberglaw.com
                                                  Attorneys for Plaintiff Jane Doe