# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------x

JANE DOE,                                                     Civil Action No.  20-CV-03908

                               Plaintiff,

    -against-


KEVIN CAHILL,

                               Defendant.
----------------------------------------------------------------------x

## NOTICE OF LAWSUIT AND REQUEST TO
## WAIVE SERVICE OF A SUMMONS

TO:                KEVIN CAHILL
                     610 West End Avenue, Apt 7C
                     New York, NY 10024

    *(Business Address)*   850 5th Avenue
                     New York, NY 10065


A lawsuit has been filed against you. The lawsuit has been filed in the Southern District of New York under the Civil Case Number shown above. A copy of the complaint is attached.

This is not a Summons or an Official Notice from the Court. This is a request, made pursuant to FRCP Rule 4(d)(1) that, to save expenses, you waive formal service of the summons by signing and returning the enclosed waivers. To avoid these expenses, you must return the enclosed waivers within thirty (30) days from the date below, which is the date on which this Notice was sent.

If you agree to sign the enclosed waiver, we'd ask that you return  copy to our office after filing same with the court via ECF. You will then have 60 days from the date this notice was sent (the date below) to answer the complaint.

If you do not return the signed waiver within the time indicated, we will arrange to have the summons and complaint served on you. We will then request that you incur the expenses of executing service.

Please refer to the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:   May 21, 2020

                                                                             C.A. Goldberg, PLLC

By:   _____
Aurore C. DeCarlo
16 Court Street, 33rd Floor
Brooklyn, NY 11241
Tel. (646) 666-8089
Email: aurore@cagoldberglaw.com
*Attorneys for Plaintiff*

## Duty to Avoid Unnecessary Expenses of Serving a Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does not include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

AO 399 (01/09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
for the
Southern District of New York

| Jane Doe, | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 20-cv-03908 |
| Kevin Cahil | ) | |
| *Defendant* | ) | |

**WAIVER OF THE SERVICE OF SUMMONS**

To: C.A. Goldberg PLLC
     *(Name of the plaintiff's attorney or unrepresented plaintiff)*

    I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

    I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

    I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

    I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _____, the date when this request was sent (or 90 days if it was sent outside the United States).  If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

                                                                        *Signature of the attorney or unrepresented party*

Kevin Cahill
*Printed name of party waiving service of summons*          *Printed name*

                                                                         *Address*

                                                                      *E-mail address*

                                                                     *Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

    Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

    "Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

    If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

    If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court.  By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

FEDERAL DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JANE DOE,

                                  Plaintiff,                                     **COMPLAINT**

         -against-                                                      **And Demand for Jury Trial**

KEVIN CAHILL,

                                  Defendant.
------------------------------------------------------------------x

       Plaintiff JANE DOE[1], by her attorneys, C.A. Goldberg PLLC, complaining of Defendant KEVIN CAHILL, upon information and belief, alleges as follows:

## NATURE OF ACTION

       1.      Plaintiff Jane Doe (hereinafter "Ms. Doe") seeks to recover damages for the pain and distress she suffered as a result of two sexual assaults perpetrated by Defendant Kevin Cahill (hereinafter "Dr. Cahill") in January and February 2019, when Ms. Doe visited Dr. Cahill's medical offices in the course of her treatment for endometriosis.

       2.      Despite an age difference that spanned more than 50 years, Dr. Cahill relentlessly pursued Ms. Doe romantically for years, and most acutely during the weeks leading to and following the assaults.

       3.      Ms. Doe admired Dr. Cahill greatly. Though she appreciated his friendship and mentorship enormously, she repeatedly told him that she was not interested in a romantic relationship. Her rejections never dissuaded Dr. Cahill.

---

[1] Plaintiff seeks to use a pseudonym as she is the victim of a sexual assault pursuant to N.Y. Civ. Rights §50-b and other statutory and common law principles.

4. When Ms. Doe began suffering from debilitating and excruciatingly painful endometriosis she sought Dr. Cahill's counsel as a referral source. Dr. Cahill took advantage of Ms. Doe's vulnerability in this period. Although Dr. Cahill did organize valuable care for Ms. Doe, he then used the power he held over her well-being to sexually assault her under the pretext of "prepping" her for a life-changing surgery.

5. On two occasions, Dr. Cahill assaulted Ms. Doe while she visited his medical office for what he had called "pre-operative" examinations. Without explanation or any justifiable medical basis, Dr. Cahill fondled Ms. Doe's breasts and pelvic area, digitally penetrated her rectum despite her protests, and forcibly kissed her.

6. In perpetrating these assaults, Dr. Cahill breached the duty of care he owed Ms. Doe as her physician and caused her to suffer physical pain, as well as severe emotional and psychological harm

7. Ms. Doe now seeks some measure of justice for the harm that has irreparably scarred her.

**THE PARTIES**

8. Ms. Doe is an individual residing in the State of Colorado.

9. Upon information and belief Dr. Cahill in an individual residing in the State of New York, County of New York.

**JURISDICTION AND VENUE**

10. This Court has original jurisdiction under 28 U.S.C. §1332(a)(1) as the matter in controversy exceeds the sum or value of $75, 000 and the parties are citizens of different states.

11. Ms. Doe is a resident of the State of Colorado. Dr. Cahill is a resident of the State of New York.

2

12. Ms. Doe seeks damages that far exceed the sum of $75,000 for psychological and emotional injuries she suffered as a result of Defendant's tortious conduct.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Dr. Cahill resides in this District and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

14. This Court has personal jurisdiction over Dr. Cahill because the tortious acts giving rise to Ms. Doe's claims took place in New York State.

## DEMAND FOR JURY TRIAL

15. Plaintiff hereby demands a trial by jury on all of her claims in this action.

## UNDERLYING FACTS

16. Ms. Doe is a 30 year-old woman currently residing in Colorado.

17. Upon information and belief Dr. Cahill is an 82 year-old physician who specializes in preventative medicine.

18. Ms. Doe first met Dr. Cahill in or around September 2009, when she was 19 years old, to be treated for a parasitic infection she had contracted while traveling in Nepal.

19. After Dr. Cahill conducted two examinations on Ms. Doe in the fall of 2009, he developed an almost immediate infatuation with her and began pursuing her romantically. For the years that followed, he sent her hundreds of communications, by phone, email, and letters. In many of these communications he made romantic overtures and he frequently invited her to New York to attend events with him and/or visit him at his home(s).

20. Although Ms. Doe maintained a correspondence with Dr. Cahill, a man she greatly admired professionally, she had made it very clear that she was not interested in a romantic or intimate relationship.

3

21. In 2018 Ms. Doe began experiencing severe and painful symptoms including vomiting, passing out, and bodily shock while she was on her menstrual cycle. Her symptoms became so severe that she had to stop attending college. She visited multiple doctors but none were able to alleviate her symptoms.

22. Desperate, Ms. Doe emailed Dr. Cahill to ask him for a referral. He responded by connecting her with a specialist in Denver, Colorado. The specialist diagnosed Ms. Doe with endometriosis.

23. While Ms. Doe was relieved to have a diagnosis, the pain she suffered was unbearable and she did not have the financial means to secure proper treatment. Desperate for help, Ms. Doe reached out to Dr. Cahill again in November 2018. At first the communications between Dr. Cahill and Ms. Doe were friendly and constructive as Dr. Cahill appeared focused on helping Ms. Doe get the treatment she needed. Dr. Cahill was well aware that Ms. Doe could not afford the surgery she needed to free her from the enormous pain she was in.

24. Dr. Cahill's romantic infatuation resumed around January 2019 when he again began peppering her with constant entreaties to enter into an intimate relationship with him. At the same time, Dr. Cahill made arrangements for Ms. Doe to receive the surgery needed to treat her endometriosis free of cost.

25. Desperate to receive the surgery she so badly needed, Ms. Doe maintained friendly contact with Dr. Cahill and endured his uncomfortable and persistent romantic advances, all while repeatedly reminding him that she had no similar interest in him.

26. Dr. Cahill made arrangements for Ms. Doe to undergo surgery with Dr. Tamar Seckin, an endometriosis excision specialist, on February 28, 2019.

27. On January 30, 2019, per Dr. Cahill's instructions, Ms. Doe visited his office for what Dr. Cahill had described as a necessary physical exam which she understood would be

4

limited to blood and urine tests. At Dr. Cahill's office, Ms. Doe did give blood and urine samples but then was asked by Dr. Cahill to come into an examination room. As she sat on the examination table across from him Dr. Cahill stated "the last time you were here you were just a little girl." Ms. Doe found this comment completely inappropriate and it made her uncomfortable.

28. Then Dr. Cahill insisted that Ms. Doe change into a hospital gown stating that he needed to check her for parasites by way of a rectal exam. Ms. Doe was completely baffled, as she was presenting no symptoms for parasites and had no idea why such an exam would be relevant to the surgical procedure for endometriosis. When Ms. Doe objected to the exam, Dr. Cahill insisted that as her 'referring physician' her needed to complete it and send the results to her surgeon before she could receive further treatment.

29. The implication to Ms. Doe was clear: she needed to meet Dr. Cahill's demand or else she would not be able to receive the surgery that he had arranged and that she desperately needed and could not afford on her own.

30. In preparation for the exam, Dr. Cahill insisted that Ms. Doe completely undress (even her top, a seemingly unnecessary disrobing for a rectal exam) and put on a hospital gown. The door to the examination room was closed and no other staff was present inside the examination room with Ms. Doe and Dr. Cahill.

31. While she lay on her side, Dr. Cahill shoved his finger into Ms. Doe's rectum without warning or explanation, and moved it around for approximately 30 seconds. This was an excruciatingly embarrassing and uncomfortable experience for Ms. Doe. It was in fact an invasive assault undertaken for no legitimate medical purpose and against Ms. Doe's vocalized protests. Ms. Doe did not observe a specimen collection device in the examination room unlike during her visit in 2009 when Dr. Cahill performed a rectal examination for her parasitic

5

infection. In this instance Dr. Cahill used only a finger and no other probing device, such as a sigmoidoscope. Ms. Doe doesn't remember if Dr. Cahill had even bothered to put gloves on before abruptly inserting his finger inside her. When Dr. Cahill completed his "examination" he left the room abruptly merely saying, "put your clothes on."

32. Ms. Doe put her clothing back on. When Dr. Cahill re-entered the room, he immediately began speaking to Ms. Doe about his romantic desires. He told her, as he often had in the past, that she needed to "be courageous" and that nobody would ever love her the way he could love her. He insisted that she come to his New York City apartment in order to assess his "taste" and to see that it was compatible with hers. Confused and disgusted Ms. Doe refused Dr. Cahill's advances and left his office.

33. In February 2019, Ms. Doe traveled back to New York City in order to undergo the surgery that Dr. Cahill had arranged. Dr. Cahill again insisted that Ms. Doe visit him at his apartment and again she deferred.

34. On February 26th, 2019, Ms. Doe received an email stating that she must come to Dr. Cahill's office for a pre-operative appointment for her upcoming surgery. Ms. Doe believed that Dr. Cahill were going to share all of the information she needed in order to be ready to have surgery in two days. Once she was inside one of the examination rooms Dr. Cahill insisted that Ms. Doe get fully undressed. He handed her a paper hospital gown and told her that she was required to undergo a "pre-operative" exam. Ms. Doe had already undergone a pre-operative examination in Colorado, but Dr. Cahill insisted that she needed to complete one pursuant to standards required by New York State.

35. Dr. Cahill then left the room but for only a brief moment and suddenly re-entered, without knocking or warning, before Ms. Doe was done undressing. Much to her discomfort he remained in the room while she finished undressing and put on her hospital gown. Similar to Ms.

6

Doe's previous visit, no other staff was present in the examination room, and the door was closed.

36. Without any warning or explanation, Dr. Cahill rammed his hand down the collar of Ms. Doe's hospital gown and began fondling her breasts. Dr. Cahill did not explain to Ms. Doe the medical purpose behind his need to fondle her breasts. Utterly confused, Ms. Doe was frozen with fear and shame.

37. Dr. Cahill then forcefully ripped open Ms. Doe's hospital gown to create an opening near her stomach, through which he inserted his hands again touching her all around her stomach, below her breasts, and then lower just above her pelvic area. This fondling of her breasts, stomach, and low waist area endured for over a minute.

38. Snapping out of her initial shock and confusion, Ms. Doe panicked and pulled away. Dr. Cahill instructed her to sit up straight on the examination table. When she did so, Dr. Cahill began to touch Ms. Doe's neck as though he were checking her lymph nodes. Then, without warning, Dr. Cahill forcefully kissed Ms. Doe on the mouth. Ms. Doe said "no, wait, wait" and began pulling away, at which point Dr. Cahill stopped and said "we're not there yet but we are getting close." Dr. Cahill gripped Ms. Doe by the forearms, said "I love you" and forcefully tried to kiss her again. Ms. Doe struggled away from him and then abruptly left his office, shocked and disgusted.

39. On February 28, 2019, Ms. Doe underwent surgery conducted by Dr. Seckin. The surgery was intensive but successful. As soon as she awoke from the general anesthesia, Ms. Doe remembers her phone ringing constantly from Dr. Cahill's calls.

40. After she was discharged from the hospital, Ms. Doe stayed in New York City for several weeks in order to heal from surgery before she traveled home. During this period of time, Dr. Cahill called Ms. Doe incessantly. He left many voicemails, many of which Ms. Doe saved.

7

In one voicemail dated March 3, 2019, he stated, "I called you 27 times yesterday and you never returned my call."

41. On March 7, 2019, Ms. Doe wrote Dr. Cahill a letter in which she again insisted that she had no interest in seeing him romantically. Despite the fact that she made her intentions clear, Dr. Cahill's intrusive phone calls to Ms. Doe continued.

42. On March 15, 2019, Ms. Doe left New York City because she had healed enough in order to travel home. Even then Dr. Cahill continued his communications with her, even though Ms. Doe had made it abundantly clear that she did not want any romantic or physical relationship with him. Dr. Cahill continued harassing Ms. Doe with communications until she cut off all contact with him in or around July 2019.

43. Dr. Cahill's conduct towards Ms. Doe was manipulative, abusive, and unlawful. Dr. Cahill abused his position as a physician, took advantage of Ms. Doe's vulnerability and desperation for medical care, and assaulted her by performing medically unnecessary, unwarranted, and/or non-indicated rectal and breast exams for no medically viable purpose. Dr. Cahill performed these exams in a deviant and sexual manner, all the while refusing to divulge the precise purpose for the exams, and the medical conditions for which they were necessary.

44. As a result of Dr. Cahill's course of conduct towards Ms. Doe, she has experienced extreme distress, anxiety, depression, and isolation.

## AS AND FOR A FIRST CAUSE OF ACTION:
### BATTERY

45. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

46. Dr. Cahill intended to cause contact with Ms. Doe and indeed did purposefully cause contact with her by among other things, kissing her, fondling her breasts, touching her abdomen, her pelvic are, and inserting his finger into her rectum.

8

47. The contacts described above were harmful and offensive as Dr. Cahill undertook them without Ms. Doe's consent and undertook them for no legitimate purpose.

48. Dr. Cahill intended to make contact with Ms. Doe on these repeated occasions.

49. Dr. Cahill's contacts were physically, psychologically, and emotionally injurious to Ms. Doe.

50. As a result of Dr. Cahill's actions, Ms. Doe suffered physical, psychological, and emotional damages.

## AS AND FOR A SECOND CAUSE OF ACTION:
## ASSAULT

51. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

52. Dr. Cahill placed Ms. Doe in fear of imminent and harmful contact through his physically coercive and forceful actions as described above.

53. Dr. Cahill intended to place Ms. Doe in fear of imminent and harmful contact when he invasively and forcefully digitally penetrated her anus without her consent, forcefully kissed her without her consent, and fondled her breasts without her consent.

54. Dr. Cahill engaged in all of these actions without any legitimate purpose.

55. As a result of Dr. Cahill's actions, Ms. Doe suffered physical, psychological, and emotional damages.

## AS AND FOR A SECOND CAUSE OF ACTION:
## SEXUAL ASSAULT

56. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

57. Dr. Cahill placed Ms. Doe in fear of imminent and harmful contact of a sexual nature through his physically coercive and forceful actions as described above.

9

58. Dr. Cahill intended to place Ms. Doe in fear of imminent and harmful contact when he invasively and forcefully digitally penetrated her anus without her consent, forcefully kissed her without her consent, and fondled her breasts without her consent.

59. Dr. Cahill engaged in inappropriate and nonconsensual touching of a sexual nature against Ms. Doe.

60. Dr. Cahill engaged in this touching of a sexual nature without any legitimate purpose.

61. As a result of Dr. Cahill's actions, Ms. Doe suffered physical, psychological, and emotional damages.

## AS AND FOR A FOURTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

62. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

63. As Ms. Doe's physician, Dr. Cahill owed Ms. Doe a duty of care.

64. Dr. Cahill breached that duty of care by physically assaulting Ms. Doe as described above.

65. Through his actions, as described above, namely by digitally penetrating her anus, fondling her breasts, stomach and pubic area, and forcibly kissing her for no medically legitimate purpose, and without her consent, Dr. Cahill breached the duty of care he owed to Ms. Doe.

66. Ms. Doe experienced severe emotional and psychological harm as a direct result of Defendant's breach of his duty of care.

67. Dr. Cahill's breach caused Ms. Doe to fear for her physical safety, as described above.

68. Dr. Cahill's conduct caused Ms. Doe to suffer serious harm including, but not limited to, significant emotional and psychological injuries.

10

## AS AND FOR A FIFTH CAUSE OF ACTION
### NEGLIGENCE

69. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

70. As Ms. Doe's physician, Dr. Cahill owed Ms. Doe a duty of care.

71. Through his actions, as described above, namely by digitally penetrating her anus, fondling her breasts, stomach and pubic area, and forcibly kissing her for no medically legitimate purpose, and without her consent, Dr. Cahill breached the duty of care he owed to Ms. Doe.

72. As a proximate result of Dr. Cahill's breach of the duty of care he owed to Ms. Doe, she incurred injuries, including but not limited to, emotional and psychological harm.

## AS AND FOR SIXTH CAUSE OF ACTION
### VIOLATION OF NYC ADMIN. CODE §8-904
### (GENDER-MOTIVATED VIOLENCE ACT)

73. Ms. Doe repeats, reiterates and re-alleges each of the foregoing allegations with the same force and effect as if fully set forth herein.

74. Dr. Cahill's actions on January 30, 2019 and February 28, 2019, as described above, constituted crimes of violence as defined in the New York City Administrative Code § 8-903.

75. Dr. Cahill's actions constituted forcible touching, a class A misdemeanor and a violation of N.Y. Penal Law §130.52.

76. Dr. Cahill's crimes of violence were motivated by Ms. Doe's gender as defined in the New York City Administrative Code §8-903, as evidenced by the facts set forth above.

77. Dr. Cahill's conduct presented a serious risk of physical injury.

11

78. By reason of the foregoing, Ms. Doe was damaged and injured, and sustained significant mental anguish and emotional distress. These injuries are likely to be permanent in nature.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant as follows:

(a) Awarding compensatory damages for all physical injuries, emotional distress, psychological harm, anxiety, humiliation, physical and emotional pain and suffering, and other harm in an amount to be determined at trial;

(b) Awarding punitive damages in an amount to be determined at trial;

(c) Awarding attorneys' fees and costs pursuant to any applicable statute or law;

(d) Awarding pre- and post-judgment interest on all such damages, fees and/or costs;

(e) Attaching all of Defendant's real property and other assets located in the State of New York pursuant to New York CPLR 6201 *et seq.* and Federal Rule of Civil Procedure 64; and,

(f) Awarding such other and further relief this Court deems just and necessary.

Dated: May 19, 2020
      Brooklyn, NY

C.A. GOLDBERG PLLC

By: */s/ Aurore C. DeCarlo*
Aurore C. DeCarlo
Carrie A. Goldberg
16 Court Street, 33rd Floor
Brooklyn, NY 11241
(646) 666-8908
aurore@cagoldberglaw.com
*Attorneys for Plaintiff*

12