UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | 20 Civ. 3908 (KPF) |
| -v.- | **OPINION AND ORDER** |
| KEVIN CAHILL, | |
| Defendant. | |

KATHERINE POLK FAILLA, District Judge:

The allegations in this case depict disturbing physical and emotional violations inflicted upon a patient by a doctor from whom she sought care. Plaintiff Jane Doe brought this action against Defendant Kevin Cahill, asserting claims for battery, assault, sexual assault, negligent infliction of emotional distress, negligence, and violations of the New York City Gender-Motivated Violence Act, N.Y.C. Admin. Code §§ 8-901 to 8-907.

There are now two motions pending before the Court that are unrelated to the underlying allegations in the Complaint. Plaintiff has moved to substitute the trustee in her Chapter 7 bankruptcy proceedings, Robert E. Tardiff, Jr. (the "Trustee"), as the plaintiff in this action and to amend the case caption accordingly, pursuant to Rules 17(a) and 25(c) of the Federal Rules of Civil Procedure. Defendant has filed a cross-motion to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that (i) Plaintiff lacks standing to litigate claims that were not disclosed as assets in her bankruptcy proceedings, and (ii) both Plaintiff and the Trustee should be judicially estopped from bringing claims in this action. In the

alternative, Defendant requests that the Court limit Plaintiff's potential recovery at trial.  For the reasons that follow, the Court grants Plaintiff's motion, and grants in part and denies in part Defendant's cross-motion.

## BACKGROUND[1]

Plaintiff alleges that in January and February 2019, Defendant committed two separate sexual assaults on her when she visited his medical office seeking treatment for endometriosis.  (*See generally* Compl. ¶¶ 1-7, 27-38).  Plaintiff further alleges that both prior to and following those assaults, Defendant subjected her to "incessant" and "intrusive" communications, until she cut off all contact with him in or around July 2019.  (*See id.* at ¶¶ 19, 24, 40-42).

A few months later, on or about October 30, 2019, Plaintiff initiated a bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Florida by filing a petition for relief under Chapter 7 of the Bankruptcy Code (the "Bankruptcy Action").  (*See* DeCarlo Aff. ¶ 3; *id.*, Ex. A (the "Bankruptcy Petition")).  In listing her assets and potential assets in the Bankruptcy Petition, Plaintiff represented that she did not have any claims

---

[1]     The facts in this Opinion are drawn from the well-pleaded allegations of Plaintiff's Complaint ("Compl." (Dkt. #5)), which is the operative pleading in this action.  The Court also relies on the Affirmation of Aurore C. DeCarlo, Esq. in Support of Plaintiff's Motion for an Order Substituting the Trustee as Plaintiff and Amending the Case Caption ("DeCarlo Aff." (Dkt. #22)), as well as the exhibits appended thereto.

For ease of reference, the Court refers to Plaintiff's opening brief in support of her motion to substitute as "Pl. Br." (Dkt. #23); Defendant's brief in opposition to Plaintiff's motion to substitute and in support of his cross-motion to dismiss as "Def. Br." (Dkt. #25); Plaintiff's brief in opposition to Defendant's cross-motion to dismiss and in further support of her motion to substitute as "Pl. Reply" (Dkt. #26); and Defendant's brief in further support of his cross-motion to dismiss as "Def. Reply" (Dkt. #27).

against third parties.  (Bankruptcy Petition 13-14 (Official Form 106A/B) (answering "no" to the question, "Do you own or have any legal or equitable interest in … [c]laims against third parties, *whether or not you have filed a lawsuit or made a demand for payment*[?]" (emphasis added))).  The bankruptcy court proceeded to discharge Plaintiff's debts in an Order issued on February 4, 2020.  (DeCarlo Aff., Ex. C).  Thereafter, on May 22, 2020, the bankruptcy court issued an Order approving the Trustee's account of the estate, discharging the Trustee, and closing the case.  (*Id.*, Ex. D).  Plaintiff did not bring her potential claims against Defendant to the bankruptcy court's attention at any point during these proceedings.  (*Id.* at ¶ 9).

Sometime after initiating the Bankruptcy Action, but before obtaining the discharge, Plaintiff retained counsel to pursue potential claims against Defendant.  (DeCarlo Aff. ¶ 4).  To that end, on January 15, 2020, Plaintiff's counsel notified Defendant of Plaintiff's intent to file the instant lawsuit with a Notice of Intent to Sue letter.  (*Id.*, Ex. B).  Plaintiff then proceeded to commence this action on May 19, 2020, with the filing of her Complaint.  (Dkt. #1).[2]  Defendant responded to the Complaint on July 8, 2020, with a letter seeking a conference to discuss his anticipated motion to dismiss.  (Dkt. #11).  In his letter, Defendant informed the Court of Plaintiff's Bankruptcy Action in the Middle District of Florida.  (*See id.* at 1-2).[3]  Plaintiff responded to

---

[2]    Due to a filing error, the operative pleading was docketed on May 20, 2020.  (Dkt. #5).

[3]    Plaintiff's counsel represents that they did not have knowledge of their client's bankruptcy proceeding prior to Defendant's July 8, 2020 letter.  (*See* DeCarlo Aff. ¶ 9).

Defendant's letter on July 13, 2020, requesting a 30-day stay of this action in order to allow her to amend her Bankruptcy Petition to disclose her claims against Defendant. (Dkt. #12). In a memorandum endorsement issued the same day, the Court granted Plaintiff's request and stayed the case. (Dkt. #13).

On July 13, 2020, Plaintiff filed a motion to reopen her bankruptcy case in the Middle District of Florida. (DeCarlo Aff., Ex. E). The following day, the bankruptcy court granted Plaintiff's motion. (Id., Ex. F). On or about July 17, 2020, Plaintiff filed an amended schedule to her Bankruptcy Petition that reflected the instant matter as a pending third-party action and potential asset. (Id., Ex. G at 7 (Official Form 106A/B)). Shortly thereafter, the Trustee requested the bankruptcy court's permission to retain Plaintiff's counsel as special counsel for the purpose of pursuing Plaintiff's claims in the instant litigation. (Id., Ex. H). The bankruptcy court granted the Trustee's application on July 24, 2020. (Id., Ex. I).

On August 13, 2020, Plaintiff's counsel submitted a letter to the Court indicating that she was seeking Defendant's consent to substitute the Trustee in for Plaintiff in this matter. (Dkt. #14). On August 26, 2020, the parties submitted a joint letter to the Court in which Defendant stated that he did not consent to Plaintiff's application and, to the contrary, argued that the Trustee should be estopped from pursuing Plaintiff's claims in this action. (Dkt. #16). In a memorandum endorsement issued the same day, the Court ordered the parties to appear for a conference to discuss their respective positions and anticipated motions. (Dkt. #17).

4

The Court proceeded to hold a conference with the parties on September 18, 2020.  (Dkt. #19 (transcript); *see also* Minute Entry for September 18, 2020).  At the conclusion of the conference, the parties agreed to a briefing schedule, pursuant to which Plaintiff filed a motion to substitute the Trustee as plaintiff on October 23, 2020 (Dkt. #21-23); Defendant responded with a cross-motion to dismiss and opposition to Plaintiff's motion to substitute on December 4, 2020 (Dkt. #24-25);[4] Plaintiff submitted a brief in opposition to Defendant's motion to dismiss and in further support of her motion to substitute on December 24, 2020 (Dkt. #26); and briefing concluded with the filing of Defendant's reply brief in further support of his motion to dismiss on January 8, 2021 (Dkt. #27).

## DISCUSSION

Plaintiff has moved to substitute the Trustee as plaintiff pursuant to Rules 17(a) and 25(c) of the Federal Rules of Civil Procedure.  (*See* Pl. Br.). Defendant has cross-moved to dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff lacks standing, and that both Plaintiff and the Trustee are estopped from pursuing this litigation.  (*See* Def. Br. 1-9).[5]  In the alternative, Defendant

---

[4]     On July 28, 2021, the Court ordered Defendant to file a redacted version of an exhibit appended to his briefing (Dkt. #28), and Defendant did so the same day (Dkt. #29).

[5]     Although the Court understands Defendant to raise judicial estoppel arguments under Rule 12(b)(6), as it has observed on a prior occasion, it believes that "issues of judicial estoppel are better addressed under the rubric of Rule 12(b)(1)."  *United States ex rel. O'Toole* v. *Cmty. Living Corp.*, No. 17 Civ. 4007 (KPF), 2020 WL 2512099, at *6 n.4 (S.D.N.Y. May 14, 2020) (citing *Ibok* v. *SIAC-Sector Inc.*, 470 F. App'x 27, 28 (2d Cir. 2012) (summary order)).  The Court will thus construe Defendant's motion to dismiss as one brought entirely under Rule 12(b)(1).

requests that the Court limit Plaintiff's recovery to any unsatisfied claims belonging to her bankruptcy estate.  (*Id.* at 9-10).

## A.    Applicable Law

### 1.    Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States,* 201 F.3d 110, 113 (2d Cir. 2000)).

The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions challenging subject matter jurisdiction: facial motions and fact-based motions.  *Carter* v. *HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016); *see also Katz* v. *Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017).  A facial Rule 12(b)(1) motion is one "based solely on the allegations of the complaint or the complaint and exhibits attached to it."  *Carter*, 822 F.3d at 56.  A plaintiff opposing such a motion bears "no evidentiary burden."  *Id.* Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether [the complaint and its exhibits] allege[ ] facts that" establish subject matter jurisdiction.  *Id.* (quoting *Amidax Trading Grp.* v. *S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)).  And to make that determination, a court must accept the complaint's allegations as true

6

"and draw[ ] all reasonable inferences in favor of the plaintiff."  *Id.* at 57 (quoting *Lunney* v. *United States*, 319 F.3d 550, 554 (2d Cir. 2003)).

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [complaint and its exhibits]." *Carter*, 822 F.3d at 57.  "In opposition to such a motion, plaintiffs must 'come forward with evidence of their own to controvert that presented by the defendant,' or may instead 'rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'"  *Katz*, 872 F.3d at 119 (alteration in original) (quoting *Carter*, 822 F.3d at 57).  If a defendant supports his fact-based Rule 12(b)(1) motion with "material and controverted" "extrinsic evidence," a "district court will need to make findings of fact in aid of its decision" as to subject matter jurisdiction. *Carter*, 822 F.3d at 57.

A related issue is that of standing.  To bring a case or controversy within the subject matter jurisdiction of federal courts, a plaintiff must have standing under Article III of the Constitution, which requires "a 'personal stake' in the outcome 'throughout the life of the lawsuit.'"  *Libertarian Party of Erie Cty.* v. *Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020), *cert. denied sub nom. Libertarian Party* v. *Cuomo*, — S. Ct. —, 2021 WL 2519117 (June 21, 2021) (quoting *Cook* v. *Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993)); *see generally Thole* v. *U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020).

2.   **Substitution of Parties Under Federal Rules of Civil Procedure
17(a) and 25(c)**

Rule 17(a) of the Federal Rules of Civil Procedure requires that an action

"be prosecuted in the name of the real party in interest."  Fed. R. Civ.

P. 17(a)(1).  This rule "ensures that only a person who possesses the right to

enforce a claim and who has a significant interest in the litigation can bring the

claim."  *Cortlandt St. Recovery Corp.* v. *Hellas Telecommunications, S.a.r.l.*, 790

F.3d 411, 420 (2d Cir. 2015) (citations, alteration and internal quotation marks

omitted).  In turn, substitution of parties upon transfer of interest is governed

by Federal Rule of Civil Procedure 25(c), which provides that "[i]f an interest is

transferred, the action may be continued by or against the original party unless

the court, on motion, orders the transferee to be substituted in the action or

joined with the original party."  Fed. R. Civ. P. 25(c).  "Rule 25(c) substitution is

a procedural mechanism designed to facilitate the continuation of an action

when an interest in a lawsuit is transferred and does not affect the substantive

rights of the parties."  *Travelers Ins. Co.* v. *Broadway W. St. Assocs.*, 164 F.R.D.

154, 164 (S.D.N.Y. 1995); *accord SEC* v. *Collector's Coffee Inc.*, 451 F. Supp. 3d

294, 297 (S.D.N.Y. 2020).  Moreover, "[s]ubstitution of a successor in interest

under Rule 25(c) is generally within the sound discretion of the trial court."

*Cody* v. *Charter Commc'ns, LLC*, No. 17 Civ. 7118 (KMK), 2020 WL 3639935, at

*7 (S.D.N.Y. July 6, 2020) (quoting *Advanced Mktg. Grp., Inc.* v. *Bus. Payment

Sys., LLC*, 269 F.R.D. 355, 358 (S.D.N.Y. 2010) (alteration and internal

quotation marks omitted)).

**B.    Analysis**

**1.    Plaintiff Lacks Standing to Pursue This Action**

Defendant argues that the Complaint must be dismissed for lack of subject matter jurisdiction as Plaintiff no longer has standing to pursue this litigation.  (*See* Def. Br. 1-3).  In particular, Defendant submits that Plaintiff lacks standing due to her failure to disclose the underlying claims against Defendant in the Bankruptcy Action.  (*Id.*).

"In bankruptcy, all of a petitioner's assets, including causes of action, become the property of the bankruptcy estate."  *Kotbi* v. *Hilton Worldwide, Inc.*, No. 11 Civ. 3550 (TPG), 2012 WL 914951, at *2 (S.D.N.Y. Mar. 19, 2012) (citing 11 U.S.C. § 541(a)(1); *Seward* v. *Devine*, 888 F.2d 957, 963 (2d Cir. 1989)). Petitioners have "an affirmative obligation" to disclose their assets to the bankruptcy court, "'including all causes of actions that can be brought by the debtor' because 'the bankruptcy system as a whole is grounded on the proposition that creditors have a right to know what the debtor's assets are even though the potential may be contingent, dependent, or conditional.'" *Cody*, 2020 WL 3639935, at *6 (quoting *Whitehurst* v. *230 Fifth, Inc.*, 998 F. Supp. 2d 233, 259 (S.D.N.Y. 2014)); *see also Faison* v. *Buckeye Pipe Line Servs. Co.*, No. 19 Civ. 7827 (VB), 2020 WL 2555229, at *3 (S.D.N.Y. May 20, 2020) ("A debtor in bankruptcy has a broad 'obligation to disclose all his interests at the commencement of a case,' and a continuing obligation to do so throughout the pendency of the bankruptcy proceeding." (internal citations omitted) (first quoting *Chartschlaa* v. *Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir.

2008), and then citing *Romeo* v. *FMA All., Ltd.*, No. 15 Civ. 6524 (ADS) (ARL), 2016 WL 3647868, at *5 (E.D.N.Y. June 30, 2016))).  When a debtor fails to disclose a claim to the bankruptcy court, "that claim remains the property of the bankruptcy estate even after discharge, and the debtor lacks standing to pursue it."  *Cody*, 2020 WL 3639935, at *6 (collecting cases); *see also Faison*, 2020 WL 2555229, at *3; *Isnady* v. *Vill. of Walden*, No. 18 Civ. 2662 (NSR), 2019 WL 3252753, at *5 (S.D.N.Y. July 19, 2019), *aff'd*, 799 F. App'x 91 (2d Cir. 2020) (summary order).

Here, neither party disputes that Plaintiff failed to disclose the existence of her potential claims against Defendant when filing her Bankruptcy Petition or at any point during the initial bankruptcy proceeding.  (*See* Def. Br. 1-3; DeCarlo Aff. ¶ 10).  Plaintiff was obligated to do so, as her claims against Defendant were the property of her bankruptcy estate.  *See In re Arana*, 456 B.R. 161, 169 (Bankr. E.D.N.Y. 2011) ("[P]roperty of the bankruptcy estate encompasses 'every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative[.]'" (quoting *Chartschlaa*, 538 F.3d at 122)); *see also id.* at 170 ("[D]uring the pendency of a bankruptcy case, the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor." (collecting cases)).  Plaintiff herself concedes that as a result of this failure to disclose, she lacks standing to pursue the current action.  (Pl. Reply 1).  In accordance with the other courts within this Circuit that have considered this issue, the Court finds that "Plaintiff cannot be permitted to assert standing in the instant

10

lawsuit now or in the future."  *Cody*, 2020 WL 3639935, at *6 (quoting *Ibok* v.

*SIAC-Sector Inc.*, No. 05 Civ. 6584 (GBD) (GWG), 2011 WL 979307, at *2-3

(S.D.N.Y. Mar. 14, 2011), *aff'd*, 470 F. App'x 27 (2d Cir. 2012) (summary

order)); *see also id.* (collecting cases).  However, before granting Defendant's

motion to dismiss the Complaint under Rule 12(b)(1), the Court first considers

Plaintiff's request to substitute the Trustee as plaintiff in this action.[6]

### 2. The Trustee May Be Substituted for Plaintiff

Plaintiff argues that while she lacks standing to pursue the instant

litigation, the Trustee should be permitted to maintain this action in her stead.

(Pl. Br. 2-4).  Defendant responds that the Trustee should be judicially

estopped from bringing this action.  (Def. Br. 7-9).

A bankruptcy trustee may be substituted as the plaintiff to an action

pursuant to Rule 25(c) of the Federal Rules of Civil Procedure.  *See Cody*, 2020

WL 3639935, at *7.  And in circumstances such as these, "[w]here a former

debtor commences an action and asserts claims that belong to her bankruptcy

estate, the usual remedy is to substitute as the real party in interest the

trustee of the bankruptcy estate in the place and stead of the former debtor."

*Grammer* v. *Mercedes Benz of Manhattan*, No. 12 Civ. 6005 (LTS) (JCF), 2014

WL 1040991, at *5 (S.D.N.Y. Mar. 13, 2014) (quoting *Kohlbrenner* v. *Victor*

*Belata Belting Co.*, No. 94 Civ. 915 (JTE), 1998 WL 328639, at *2 (W.D.N.Y.

---

[6]     Given the Court's finding that Plaintiff lacks standing, it need not reach Defendant's
argument that Plaintiff should be judicially estopped from pursuing this action.  (*See*
Def. Br. 3-6).  It will instead consider Defendant's judicial estoppel arguments when it
turns to Plaintiff's motion to substitute the Trustee and Defendant's alternative request
that Plaintiff be precluded from recovering damages at trial.

June 3, 1998)).  District courts have indicated that substitution of the trustee is "an appropriate transfer of interests" as it "'expedit[es] and simplif[ies] the action,' which is the 'primary consideration' when determining whether to substitute a successor in interest." *Cody*, 2020 WL 3639935, at *7 (quoting *Travelers Cas. & Sur. Co.* v. *Dormitory Auth.-N.Y.*, No. 07 Civ. 6915 (DLC), 2011 WL 500068, at *2 (S.D.N.Y. Feb. 14, 2011)); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, No. 04 Civ. 7274 (GBD), 2005 WL 1018187, at *4 (S.D.N.Y. Apr. 29, 2005) ("Instead of dismissing the debtor's case, it is generally preferable to permit the bankruptcy trustee to be substituted, as the named plaintiff, in place of the debtor.").

Defendant argues that Plaintiff would be judicially estopped from bringing this action, and that the Trustee should thus similarly be estopped from doing so.  (Def. Br. 7-9).  "The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Coffaro* v. *Crespo*, 721 F. Supp. 2d 141, 145 (E.D.N.Y. 2010) (quoting *Rodal* v. *Anesthesia Grp. of Onondaga, P.C.,* 369 F.3d 113, 118 (2d Cir. 2004)).  "Judicial estoppel is regularly invoked in the bankruptcy context; specifically, 'judicial estoppel will prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy.'" *Ashmore* v. *CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (internal brackets omitted) (quoting *BPP Ill., LLC* v. *Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017)). The Second Circuit has explained that in order to invoke judicial estoppel, a

12

movant must show: (i) "a party's later position is clearly inconsistent with its earlier position," and (ii) "the party's former position has been adopted in some way by the court in an earlier proceeding." *Id.* Additionally, the Second Circuit often "require[s] a showing that the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel." *Id.* Finally, judicial estoppel should only be invoked "when the risk of inconsistent results with its impact on judicial integrity is certain." *Id.* (quoting *Adelphia Recovery Tr.* v. *Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)).

The Court is unpersuaded by Defendant's argument that "[b]ecause the plaintiff would be judicially estopped from bringing this action, so too would the bankruptcy trustee." (Def. Br. 7). This Court has previously observed that "'[j]udicial estoppel does not bar a trustee who has been substituted into a ... case' because the trustee has neither abandoned any claim nor taken an inconsistent position under oath with regard to any claim." *United States ex rel. O'Toole* v. *Cmty. Living Corp.*, No. 17 Civ. 4007 (KPF), 2020 WL 2512099, at *7 (S.D.N.Y. May 14, 2020) (alterations in *O'Toole*) (quoting *Grammer*, 2014 WL 1040991, at *6). Other courts have declined to apply judicial estoppel for similar reasons. *See, e.g.*, *Kotbi*, 2012 WL 914951, at *4 ("Although plaintiff may have taken an inconsistent position in his bankruptcy proceeding, it cannot be said that the bankruptcy estate ... took that position."); *see also Cody*, 2020 WL 3639935, at *8 ("[R]egardless of the level of culpability that may be attributed to Plaintiff, there is no discernible reason why *Plaintiff's* failure to

disclose should foreclose *Trustee's* ability to prosecute this Action on behalf of Plaintiff's injured *creditors*." (emphases in *Cody*)).

In his briefing, Defendant does not argue that the Trustee has abandoned any claim or taken any inconsistent positions. Defendant also does not refer the Court to any cases in which courts have estopped trustees from pursuing litigation in such circumstances, and the Court is aware of no such cases. Rather, Defendant himself acknowledges that "several courts" have found to the contrary. (Def. Br. 7 (collecting cases)). Given the dearth of caselaw in his favor, Defendant resorts to hypothesizing that allowing the Trustee to pursue Plaintiff's claims would create perverse incentives. (*Id.* at 8-9). In particular, Defendant argues that substitution of the Trustee (i) incentivizes debtors to conceal the existence of pending claims in bankruptcy proceedings (*id.* at 8), and (ii) incentivizes defense attorneys to postpone the disclosure of a client's bankruptcy proceeding until significant discovery in an action has already occurred (*id.* at 8-9).[7]

The Court is persuaded by the countervailing equitable considerations that have motivated other courts to permit substitution in this context. *See, e.g., Grammer*, 2014 WL 1040991, at *6 (finding that "the application of judicial estoppel against the Trustee here would not be equitable," as it "would

---

[7]     At the outset, the Court observes that the threat of sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 should mitigate Defendant's concerns about incentivizing counsel to withhold such a disclosure. Moreover, for reasons that will be made evident when the Court turns to Defendant's arguments in favor of limiting Plaintiff's recovery in this action, it doubts that its decision will serve to incentivize either debtors or defense attorneys to conceal the existence of parallel litigation and bankruptcy proceedings.

14

represent a significant detriment to the Trustee and, more importantly, to [the plaintiff's] creditors while at the same time permitting Defendant to receive a possible windfall by virtue of not being held accountable for its allegedly illegal actions" (alteration in *Grammer*) (quoting *Canterbury* v. *Fed.-Mogul Ignition Co.*, 483 F. Supp. 2d 820, 827 (S.D. Iowa 2007))); *see also Montoya* v. *Daniel O'Connell's Sons, Inc.*, No. 15 Civ. 1580 (ALC) (KNF), 2017 WL 1167336, at *5 (S.D.N.Y. Mar. 28, 2017) ("Estopping the Trustee from prosecuting this action would allow what Defendants have described as [plaintiff's] fraud on his creditors to continue.  If the Trustee can secure recovery from Defendants, that money will go towards satisfying [plaintiff's] creditors, who, to date, have received nothing.").  In point of fact, courts in this District have rejected arguments similar to those proffered by Defendant here, finding that any intentional deceit by a plaintiff "fails to address why *Trustee* and Plaintiff's *creditors*, who played no role in the alleged deceit, should suffer the consequences, and why Defendant — who is not a creditor in the Bankruptcy Action — should benefit."  *Cody*, 2020 WL 3639935, at *9 (emphases in *Cody*). The Court agrees with these other courts that "the most equitable way forward is to permit [the] Trustee to prosecute this action and seek recovery on behalf of Plaintiff's creditors."  *Id.* (collecting cases).  For these reasons, the Court grants Plaintiff's motion to substitute the Trustee as plaintiff in this action.

### 3.    Plaintiff Is Estopped from Recovering Damages

Lastly, the Court addresses Defendant's request that in the event the Court substitutes the Trustee as plaintiff, the Court limit Plaintiff's potential

damages to an amount sufficient to cover the unsatisfied claims against her Chapter 7 bankruptcy estate.  (Def. Br. 9-10; Def. Reply 1-3).  Defendant correctly observes that several sister courts, when faced with similar motions to substitute, have  precluded plaintiffs from personally profiting from the continued litigation.  (*See id.* (citing *Cody*, 2020 WL 3639935, at *9; *Grammer*, 2014 WL 1040991, at *6; *Kotbi*, 2012 WL 914951, at *4)).  Courts appear to have done so in an effort to balance the various equitable considerations discussed above.  For example, one district court reasoned that while "estoppel of the Trustee … is not equitable," the plaintiff was "estopped from seeking to recover, directly or indirectly, due to his failure to schedule this case in his … bankruptcy petition."  *Grammer*, 2014 WL 1040991, at *6; *see also Kotbi*, 2012 WL 914951, at *3 ("It would violate the integrity of the bankruptcy system to permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently assert those claims for his own benefit in a separate proceeding." (citation omitted)).

In response, Plaintiff argues that limiting damages at this stage of the litigation is premature.  (Pl. Reply 5).  She notes that no determination has yet been made on liability, and submits that any decision on damages should include an inquiry into "whether Plaintiff truly engaged in bad faith by failing to disclose these claims."  (*Id.*).  In support, Plaintiff refers the Court to its sister court's opinion in *Montoya*, which reserved decision on the defendant's request to limit damages where there were disputed issues of fact regarding the plaintiff's mental capacity.  2017 WL 1167336, at *5; *but cf. id.* (observing that

"ultimately," precluding plaintiff's recovery "may prove to be the equitable course").[8]  Here, however, the parties do not argue that there are any such disputed issues of fact.  Moreover, while Plaintiff invites the Court to conduct an inquiry into whether she engaged in bad faith at a later date, the district courts that have precluded plaintiffs from recovery in similar circumstances have not required such findings.  *See, e.g.*, *Grammer*, 2014 WL 1040991, at *5 (noting plaintiff's argument "that his failure to disclose his potential claims was inadvert[ent] and that he did not report a potential claim against Defendants during the Chapter 7 proceeding because he believed that the EEOC was investigating whether he had a legitimate reportable cause of action against the Defendants"); *Kotbi*, 2012 WL 914951, at *4-5 (precluding estate "from recovering any monetary value in this case beyond what is required to pay creditors' claims, interest, and the trustee's fees," despite finding that it was "possible" that plaintiff acted in bad faith but "uncertain"); *but see Cody*, 2020 WL 3639935, at *10-11 (declining to issue sanctions beyond barring plaintiff from prosecuting and benefiting from the action where defendant contended

---

[8]     Plaintiff also cites to the decision from the District of Vermont in *Strauss* v. *Hibbits*, in which the district court found that the issue of damages would be "ripe for decision only 'in the unlikely scenario where the trustee would recover more than an amount that would satisfy all creditors and the costs and fees incurred.'"  No. 5:15 Civ. 9 (GWC), 2016 WL 7665786, at *2 (D. Vt. Apr. 18, 2016) (quoting *Parker* v. *Wendy's Int'l, Inc.*, 365 F.3d 1268, 1273 n.4 (11th Cir. 2004)).  At this stage of the litigation, the Court is admittedly not in a position to opine on the likelihood that the Trustee will find himself in this scenario, although it observes that Plaintiff's amended schedule to her Bankruptcy Petition listed liabilities amounting to approximately $128,000 (DeCarlo Aff., Ex. G at 1), and represented that she sought damages in this action "far exceed[ing] the sum of $75,000" (*id.* at 7).

17

that plaintiff and her counsel lied under oath, made contradictory statements, and failed to correct the misrepresentations).[9]

As it is undisputed that Plaintiff failed to disclose her claims against Defendant in the Bankruptcy Proceeding, and in the absence of any disputed issues of fact regarding the timelines of the two litigations, the Court agrees with Defendant that Plaintiff is now precluded from recovery.  *See Grammer*, 2014 WL 1040991, at *6.  Therefore, while Plaintiff will be permitted to substitute the Trustee, the Trustee may not seek any recovery for Plaintiff's (as distinguished from the estate's) benefit.

---

[9]     While the Court recognizes that district courts have refrained from applying judicial estoppel where a debtor's failure to disclose resulted from a "good faith mistake or an unintentional error," *Isnady* v. *Vill. of Walden*, No. 18 Civ. 2662 (NSR), 2019 WL 3252753, at *6 (S.D.N.Y. July 19, 2019) (citation omitted), *aff'd*, 799 F. App'x 91 (2d Cir. 2020) (summary order), Plaintiff has not provided a basis either for the application of this exception or even for a future hearing on its applicability.  In this Circuit, district courts have limited the good faith exception to circumstances where "either the debtor has [i] no knowledge of the claims or [ii] no motive to conceal the claims."  *Id.* (quoting *Azuike* v. *BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013)).  Here, Plaintiff has argued neither lack of knowledge nor lack of motive.  And the chronology of this litigation — which, it bears underscoring, was initiated after the Bankruptcy Proceeding was commenced but before Plaintiff received her discharge — would undermine any such argument.  In fact, Defendant represents that following Plaintiff's counsel's transmission of a January 15, 2020 Notice of Intent to Sue letter to Defendant, Plaintiff testified at a proceeding in her Bankruptcy Action that she had not "seen any attorneys for any reason other than this bankruptcy" in the prior four years.  (Def. Br. 4; Dkt. #29 at 3 (Transcript of Meeting of Creditors)).  *Cf. Ibok*, 470 F. App'x at 29 ("[Plaintiff's] contention that his failure to disclose his claims was a good faith mistake is unavailing.  Given that he was pursuing an appeal in this lawsuit at the time he filed for bankruptcy, his failure to disclose it cannot be deemed inadvertent[.]").  While the Court finds the allegations in the Complaint to be disturbing, any sympathy for Plaintiff engendered by the nature of her claims cannot supply a sufficient basis for the application of the good faith exception, given the record in this case and in the absence of any arguments from Plaintiff regarding her lack of knowledge or motive.

18

## CONCLUSION

For the reasons stated in this Opinion, Plaintiff's motion to substitute the Trustee, Robert E. Tardiff, Jr., as plaintiff is GRANTED.  Defendant's motion to dismiss is DENIED, but his alternative request to limit Plaintiff's damages is GRANTED.  The Trustee may proceed with pursuing this litigation on behalf of Plaintiff's creditors, but is precluded from seeking any recovery for Plaintiff's personal benefit.  The Clerk of Court is directed to modify the case caption so that the Trustee is the operative plaintiff in this action, and to terminate the motions at docket entries 21 and 24.

Defendant is hereby ORDERED to file a responsive pleading on or before **August 30, 2021**.  Further, the parties are directed to submit a joint letter and Proposed Case Management Plan and Scheduling Order to the Court on or before **September 13, 2021**.

SO ORDERED.

Dated:      August 9, 2021
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

19